# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| INSITE PLATFORM PARTNERS, INC., ) <br> d/b/a NORTH AMERICAN SATELLITE CORP., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PACIFIC LPG CORPORATION, d/b/a ) <br> PACIFIC PROPANE, ) <br> ) <br> Defendant. ) | Case No. 4:16-CV-00586 JAR |

## MEMORANDUM AND ORDER

This matter is before the Court on a Motion to Dismiss For Lack of Personal Jurisdiction filed by Defendant Pacific LPG Corporation, d/b/a Pacific Propane. (Doc. No. 9) Defendant argues it is not subject to personal jurisdiction in Missouri under Missouri's long-arm statute, Mo. Rev. Stat. § 506.500.1, and lacks sufficient contacts with Missouri to permit this Court to exercise jurisdiction over it. In support of its motion, Defendant submits a declaration by its principal, Paula Heath, who states that Defendant does not own, operate, possess, or lease any real property in Missouri, does not sell, ship, or distribute any products in Missouri, does not maintain any records in Missouri, and has no address, telephone numbers, or bank accounts in Missouri. (Declaration of Paula Heath ("Heath Decl."), Doc. No. 9-1, at ¶¶ 5-7) None of Defendant's officers reside in or have offices in Missouri. (Id. at ¶ 6) According to Heath, Defendant did not initiate business within the state of Missouri, and no face-to-face meetings related to the alleged transactions took place in Missouri. (Id. at ¶ 12) In response, Plaintiff InSite Platform Partners, Inc., d/b/a North American Satellite Corp. (NASCorp), argues that because Defendant has transacted business within Missouri and committed tortious acts within

Missouri, its motion should be denied. (Doc. No. 15 at 5-9) Plaintiff's Chairman and Chief Executive Officer, R.L. ("Rick") Humphrey, has filed a declaration in support of these arguments. (Declaration of R.L. ("Rick") Humphrey ("Humphrey Decl."), Doc. No. 15-1) The motion is fully briefed and ready for disposition.

**Facts**

Plaintiff, a Missouri corporation with its principal place of business in Missouri, provides real-time monitoring of propane and other gas tank storage levels via satellite through its patented SkyTracker<sup>TM</sup> system.[1] (Petition for Damages ("Pet."), Doc. No. 6 at ¶ 6) Defendant, a California corporation with its principal place of business in California, provides propane delivery, tank rental, and installation services to commercial and individual consumers. (Id. at ¶ 2)

On April 24, 2007, Defendant executed a Merchandise/Service Work Order and its attendant Business Rules ("Subscription Agreement."). (Pet. at ¶ 9) Under this Subscription Agreement, and subsequent agreements between the parties entered into between 2007 and 2012, Plaintiff provided Defendant with the hardware, software, and monitoring services necessary for Defendant to implement and use a number of Plaintiff's proprietary SkyTracker™ systems. (Id. at ¶¶ 9-13)

On or about August 1, 2013, Defendant cancelled all monthly monitoring services. Plaintiff acknowledged the cancellation and requested Defendant return all SkyTracker™ equipment. (Id. at ¶ 14) When Defendant failed to return the equipment, Plaintiff

---

[1] According to Plaintiff, the SkyTracker™ system consists of two versions, the SkyTracker™ II and a SkyTracker™ III model (collectively "ST"). Both use proprietary hardware, namely the "STx2" satellite modem, that enables the SkyTracker™ system to send transmissions to and from low-Earth orbit (LEO) satellites. The SkyTracker™ II and SkyTracker™ III systems, along with their STx2 satellite modems, are identifiable by unique electronic serial numbers assigned to each individual SkyTracker™ system and STx2 modem. LEO satellite services are provided by third parties contracted for by Plaintiff. (Pet. at ¶ 7)

decommissioned and turned off all of the SkyTracker™ systems installed on Defendant's tanks. (Id. at ¶¶ 15-16) Plaintiff alleges that over the next 15 months, Defendant reactivated 2,185 SkyTracker™ systems on a competing system and continued to use them. (Id. at ¶¶ 16-20) Plaintiff has been charged for the monthly base fees and transmission fees on these units for a total direct loss of $229,425.00 as of March 31, 2015. (Id. at ¶ 20)

On March 15, 2016, Plaintiff filed suit in the Circuit Court of St. Charles County, Missouri seeking damages under Missouri state law for breach of contract (Count I); fraud (Count II); unjust enrichment (Count III); quantum meruit (Count IV); and conversion (Count V). Defendant removed the action to this Court on April 26, 2016, on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 (Doc. No. 1) and then moved to dismiss for lack of personal jurisdiction (Doc. No. 9).

**Legal standard**

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts 'to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591-92 (8th Cir. 2011) (quoting Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004)). "Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." Id. (internal citations and quotation marks omitted). The evidence must be viewed in the light most favorable to the plaintiff and all factual conflicts are resolved in its favor in deciding whether the plaintiff made the requisite showing. Id. (citing Digi–Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996)).

**Discussion**

A federal court may assume jurisdiction over a nonresident defendant only to the extent permitted by the forum state's long-arm statute and the Due Process Clause of the Constitution. Dakota Industries, Inc. v. Ever Best Ltd., 28 F.3d 910, 915 (8th Cir. 1994) (citing Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280 (8th Cir. 1991)). Missouri's long-arm statute authorizes personal jurisdiction over defendants who, *inter alia*, transact business, make a contract, or commit a tortious act within the state. See Mo. Rev. Stat. § 506.500.1(1) - (3). "These individual categories are construed broadly, such that if a defendant commits one of the acts specified in the long-arm statute, the statute will be interpreted to provide for jurisdiction, within the specific categories enumerated in the statute, to the full extent permitted by the Due Process Clause." Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG, 646 F.3d 589, 593 n. 2 (8th Cir. 2011). The Court will, therefore, focus on whether exercising personal jurisdiction over Defendant comports with federal due process standards. Dakota Indus., 28 F.3d at 915; see also Gray v. Hudson, No. 14CV1183 HEA, 2015 WL 4488143, at *9 (E.D. Mo. July 23, 2015); Meredith, Inc. v. Marketing Resources Group of Oregon, Inc., 4:04CV1727-DJS, 2005 WL 2334294, at *2 (E.D. Mo. Sept. 23, 2005). If it does, Defendant would be subject to the long-arm statute, and if it does not, Plaintiff's claims should be dismissed for lack of personal jurisdiction. Clune v. Alimak AB, 233 F.3d 538, 541 (8th Cir. 2000); Express Scripts, Inc. v. Care Continuum Alliance, Inc., No. 4:10CV2235CDP, 2011 WL 2199967, at *2 (E.D. Mo. June 7, 2011).

Due process requires a defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." See Myers v. Casino Queen, Inc., 689 F.3d 904, 911 (8th Cir. 2012) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The relevant contacts with the forum

state must be more than "random, fortuitous or attenuated." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (citations omitted). "The fundamental inquiry is whether the defendant has 'purposefully availed' itself of the 'benefits and protections' of the forum state," Viasystems, Inc., 646 F.3d at 594 (quoting Burger King Corp., 471 U.S. at 482), "to such a degree that it 'should reasonably anticipate being haled into court there.'" Id. (quoting World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

The Eighth Circuit has established a five factor test to determine whether a defendant's contacts with the forum state are sufficient to establish personal jurisdiction over the defendant: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience or inconvenience to the parties."[2] Dairy Farmers of Am., Inc. v. Bassett & Walker Intern., Inc., 702 F.3d 472, 477 (8th Cir. 2012) (quoting K–V Pharm., 648 F.3d at 592). Personal jurisdiction may be established by general or specific jurisdiction, and the third factor – relation of the cause of action to the contacts – distinguishes between the two. Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 819 (8th Cir. 1994) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 8 (1984)).

For general jurisdiction to exist, the defendant must have "continuous and systematic" contacts with the forum state, even if the plaintiff's claims do not arise out of those activities. In contrast, specific jurisdiction arises when the injury giving rise to the lawsuit occurred within or had some connection to the forum state. Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996); see also Miller v. Nippon Carbon Co., Ltd., 528 F.3d 1087, 1091 (8th Cir. 2008); Steinbuch v. Cutler, 518 F.3d 580, 586 (8th Cir. 2008). Plaintiff does not

---

[2] Significant weight is afforded to the first three factors; the other factors are secondary and not dispositive. Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004).

contend the basis for personal jurisdiction over Defendant is its "continuous and systematic" contacts with the state required for general jurisdiction.[3] (See Doc. No. 15 at 9) Thus, the Court considers whether Defendant's contacts are sufficient for specific jurisdiction. Miller, 528 F.3d at 1091.

As an initial matter, Defendant argues it only transacted business with NASCorp, an active, for-profit corporation with its principal place of business in Tennessee, and not with Insite Platform Partners, Inc. (Doc. No. 10 at 6-7; Heath Decl. at ¶ 8) Thus, any business relationship only contemplated the states of California and Tennessee. (Doc. No. 10 at 7; Health Decl. at ¶¶ 10-11) In response, Plaintiff's principal, Rick Humphrey, states that InSite Platform Partners, Inc., a Missouri corporation authorized and licensed to do business in the state of Missouri, is the successor to NASCorp and operates its business under that name. (Humphrey Decl. at ¶¶ 4-5) Defendant questions whether Plaintiff is in fact the successor to NASCorp because Plaintiff has provided no evidence of a sale or transfer of NASCorp's assets and because NASCorp appears to have remained in business despite any such sale or transfer of assets. (Doc. No. 16 at 10)

The Court need not decide whether Defendant conducted business with a Missouri or Tennessee corporation, as the focus of the Court's minimum contacts analysis is on the relationship between Defendant, the state of Missouri, and this litigation. Darwin Chambers Co. L.L.C. v. Bennington Coll. Corp., No. 4:14-CV-1925-CAS, 2015 WL 1475009, at *8-9 (E.D. Mo. Mar. 31, 2015) (internal citations and quotation marks omitted); see also Scullin Steel, 676 F.2d at 313 ("It is a defendant's contacts with the forum state that are of interest in determining if

---

[3] A corporation is only subject to general jurisdiction where it is "at home," i.e., where it is incorporated or has its principal place of business. Daimler AG v. Bauman, 134 S. Ct. 746, 760 (2014). Here, Defendant is a California corporation with its principal place of business in California. (Pet. at ¶ 2)

in personam jurisdiction exists, not its contacts with a resident.") (internal citations and quotation marks omitted).

Plaintiff has established the existence of contacts between Defendant and the state of Missouri. First, more than 17,000 SkyTracker™ transmission payloads were sent monthly from Defendant's propane tank sites in California to Plaintiff's servers in St. Louis, Missouri for decoding. Over five years, this amounted to over 1.1 million transmissions into Missouri. (Doc. No. 15 at 3, 5-6; Humphrey Decl. at ¶¶ 13, 25) Second, Defendant took possession of over 2,185 Sky Tracker™ units under subscription agreements "F.O.B. Cape Girardeau, Missouri."[4] (Id. at 7, 9-10; Doc. No. 15-2; Humphrey Decl. at ¶¶ 10-11) Third, over the course of their business dealings, Defendant received technical support and training on the SkyTracker™ system from Plaintiff's Missouri offices. (Id. at 8, 10; Humphrey Decl. at ¶¶ 12, 23-24)

In support of its argument that Defendant's data transmissions constitute the transaction of business in Missouri, Plaintiff relies on Mead v. Conn, 845 S.W.2d 109 (Mo. Ct. App. 1993). In Mead, a non-resident doctor transmitted medical test results by telephone to Missouri for analysis under a business relationship where he paid for the services and stood to profit from them. Id. at 112. The court held this constituted the transaction of business in the state. Id.

Defendant argues that unlike the doctor in Mead, it is not directly involved with the transmittal of data to Missouri. Rather, the transmissions are sent from SkyTracker™ units owned by Plaintiff to a satellite owned or operated by a third-party, who then sent the transmissions to Plaintiff's servers or offices in Missouri. Accordingly, Defendant argues it has not directed any activity at Missouri. (Doc. No. 16 at 4-6) Defendant further argues that in Mead, the court found that even though the doctor had a history of transmitting results to Missouri for

---

[4] Under a contract "F.O.B. the point of shipment," title passes at the moment of delivery to the carrier. Vision Stream, Inc. v. Dir. of Revenue, 465 S.W.3d 45, 49 (Mo. 2015).

interpretation (at least fifty in the several years prior to the suit), the contacts were minimal and not of the nature and quality so as to meet the due process analysis of long arm jurisdiction, id. at 112-13,[5] thus supporting Defendant's motion to dismiss. (Doc. No. 16 at 6)

In a due process analysis, the Court considers the nature and quality of the contacts with the forum state, the quantity of those contacts, and the relation of the cause of action to those contacts. Dairy Farmers, 702 F.3d at 477. Here, Defendant entered into a number of subscription agreements with Plaintiff, a Missouri corporation, for hardware, software, and monthly monitoring services of its propane and other gas tank storage levels via satellite. The agreements clearly contemplated that data transmissions from Defendant's propane tank sites in California would be processed by Plaintiff in Missouri, and technical support and training from Plaintiff's Missouri offices is a logical corollary of the agreements. Thus, the nature and quality of the contacts was significant. And unlike in Mead, this case did not arise from a single transaction; more than 1.1 million transmissions were sent into Missouri over the course of five years. With respect to the contractual delivery provisions of the subscription agreements, Defendant is correct that a delivery term, standing alone, does not create sufficient contact to uphold jurisdiction. However, the Eighth Circuit has held that such terms "are not irrelevant to a finding of personal jurisdiction" if there are other contacts with the forum state besides delivery. Bell Paper, 22 F.3d at 820 n.2 (citing Papachristou v. Turbines, Inc., 902 F.2d 685, 686 (8th Cir. 1990)). Further, these contacts relate directly to Plaintiff's underlying causes of action. Plaintiff alleges it has paid for and maintained infrastructure and satellite services which Defendant has

---

[5] In considering the relation of the cause of action to the contacts with Missouri, the Mead court noted that the plaintiff only alleged that an EKG for decedent was sent to Missouri on one occasion, that is, the day of his death. 845 S.W.2d at 113.

8

impermissibly accessed and used through Plaintiff's Missouri servers after purporting to cancel its subscription services.

After considering all of the alleged facts and circumstances of this case, the parties' interactions and course of dealing, and the quality and nature of Defendant's contacts with the state of Missouri, the Court concludes that its exercise of personal jurisdiction over Defendant comports with due process and with Missouri's long-arm statute, Mo. Rev. Stat. § 506.500.1.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Pacific LPG Corporation d/b/a Pacific Propane's Motion to Dismiss For Lack of Personal Jurisdiction [9] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant shall respond to Plaintiff's Petition **no later than November 23, 2016**.

**IT IS FINALLY ORDERED** that a Rule 16 conference will be set by separate Order.

Dated this 27th day of October, 2016.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**